**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ASSOCIATION FOR MOLECULAR PATHOLOGY; AMERICAN COLLEGE OF MEDICAL GENETICS; AMERICAN SOCIETY FOR CLINICAL PATHOLOGY; COLLEGE OF AMERICAN PATHOLOGISTS; HAIG KAZAZIAN, MD; ARUPA GANGULY, PhD; WENDY CHUNG, MD, PhD; HARRY OSTRER, MD; DAVID LEDBETTER, PhD; STEPHEN WARREN, PhD; ELLEN MATLOFF, M.S.; ELSA REICH, M.S.; BREAST CANCER ACTION; BOSTON WOMEN'S HEALTH BOOK COLLECTIVE; LISBETH CERIANI; RUNI LIMARY; GENAE GIRARD; PATRICE FORTUNE; VICKY THOMASON; KATHLEEN RAKER, | No. 09 Civ. 4515 (RWS)<br><br>ECF Case |
| Plaintiffs, | |
| -against- | |
| UNITED STATES PATENT AND TRADEMARK OFFICE; MYRIAD GENETICS; LORRIS BETZ, ROGER BOYER, JACK BRITTAIN, ARNOLD B. COMBE, RAYMOND GESTELAND, JAMES U. JENSEN, JOHN KENDALL MORRIS, THOMAS PARKS, DAVID W. PERSHING, and MICHAEL K. YOUNG, in their official capacity as Directors of the University of Utah Research Foundation, | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION TO CONDUCT JURISDICTIONAL DISCOVERY**

**JONES DAY**
222 East 41st Street
New York, NY  10017-6702
Tel:  (212) 326-3939
Fax:  (212) 755-7306

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ....................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I.  PLAINTIFFS ARE NOT ENTITLED TO DISCOVERY ON THE ISSUE OF
    PERSONAL JURISDICTION........................................................................................ 4

    A.  Personal Jurisdiction Must Be Analyzed With Respect To The Directors, And
        Plaintiffs Request No Discovery As To Them .................................................... 4

    B.  Plaintiffs' Discovery Requests Regarding The University Of Utah Are Incapable
        Of Establishing General Jurisdiction ................................................................. 8

    C.  Plaintiffs' Discovery Requests Regarding The University Of Utah And The
        UURF Are Incapable Of Establishing Specific Jurisdiction............................. 12

II.  PLAINTIFFS ARE NOT ENTITLED TO DISCOVERY ON THE ISSUE OF
     SUBJECT MATTER JURISDICTION . ....................................................................... 14

CONCLUSION.................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

CASES

*APWU v. Potter,*
    343 F.3d 619 (2d Cir. 2003)...................................................................................2

*Arquest, Inc. v. Kimberly-Clark Worldwide, Inc.,*
    No. 07 Civ. 11202 (CM), 2008 WL 2971775 (S.D.N.Y. July 31, 2008)..................5

*Avocent Huntsville Corp. v. Aten Int'l Co.,*
    552 F.3d 1324 (Fed. Cir. 2008).........................................................................12, 13

*Breckenridge Pharm., Inc v. Metabolite Labs., Inc.,*
    444 F.3d 1356 (Fed. Cir. 2006)..........................................................................12, 13

*Cat Tech LLC v. TubeMaster, Inc.,*
    528 F.3d 871 (Fed. Cir. 2008).................................................................................14

*Daventree Ltd. v. Republic of Azerbaijan,*
    349 F. Supp. 2d 736 (S.D.N.Y. 2004)......................................................................2

*Ex Parte Young,*
    209 U.S. 123 (1908)................................................................................5, 6, 7, 8

*Ferris v. Rollins College Inc.,*
    No. 1:08-cv-00039-SPM-AK, 2008 WL 4569872 (N.D. Fla. Oct. 9, 2008) ....................10, 11

*Gallant v. Trustees of Columbia Univ. in City of N.Y.,*
    111 F. Supp. 2d 638 (E.D. Pa. 2000) .....................................................................11

*Gehling v. St. George's Sch. of Med., Ltd.,*
    773 F.2d 539 (3d Cir. 1985)....................................................................................9

*Grand River Enters. Six Nations, Ltd v. Pryor,*
    425 F.3d 158 (2d Cir. 2005)....................................................................................7

*Great W. United Corp. v. Kidwell,*
    577 F.2d 1256 (5th Cir. 1978) ...........................................................................4, 6

*Islam v. Goord,*
    No. 05 Civ. 7502 (RJH), 2006 WL 2819651 (S.D.N.Y. Sept. 29, 2006) .................10

*Ivoclar Vivadent, Inc. v. Ultident, Inc.,*
    No. 04-CV-0984 (SC), 2005 WL 1421805 (W.D.N.Y. June 15, 2005) ....................8

**TABLE OF AUTHORITIES**
Continued

**Page**

*Jazini v. Nissan Motor Co., Ltd.*,
148 F.3d 181 (2d Cir. 1998)...............................................3, 9

*Langenberg v. Sofair*,
No. 03-CV-8339 (KMK), 2006 WL 2628348 (S.D.N.Y. Sept. 11, 2006).....................3, 9, 10

*Norris v. Okla. City Univ.*,
No. C-93-1626-VRW, 1993 WL 313122 (N.D. Cal. Aug. 3, 1993) .......................................10

*Pennington Seed, Inc. v. Produce Exchange No. 299*,
457 F.3d 1334 (Fed. Cir. 2006)...........................................5

*Prasco, LLC v. Medicis Pharm. Corp.*,
537 F.3d 1329 (Fed. Cir. 2008)...........................................15

*Richards v. Duke Univ.*,
480 F. Supp. 2d 222 (D.D.C. 2007) ...........................................10

*Ross v. Creighton Univ.*,
740 F. Supp. 1319 (N.D. Ill. 1990) ...........................................11

*RSM Production Corp. v. Fridman*,
No. 06-CV-11512, 2009 WL 424540 (S.D.N.Y. Feb. 19, 2009).........................2, 11

*Scherer v. Curators of Univ. of Mo. & Law Sch. Admission Council*,
152 F. Supp. 2d 1278 (D. Kan. 2001) ...........................................9

*SODEPAC, S.A. v. Choyang Park*,
No. 02 Civ. 3927, 2002 WL 31296341 (S.D.N.Y. Oct. 10, 2002) .........................11

*Stroman Realty, Inc. v. Wercinski*,
513 F.3d 476 (5th Cir. 2008) ...........................................4, 5

*Stutts v. De Dietrich Group*,
465 F. Supp. 2d 156 (E.D.N.Y. 2006) ...........................................3

*Wafios Mach. Corp. v. Nucoil Indus. Co.*,
No. 03 Civ. 9865 (RWS), 2004 WL 1627168 (S.D.N.Y. July 21, 2004) .................8

*Warner Bros. Entm't Inc. v. Ideal World Direct*,
516 F. Supp. 2d 261 (S.D.N.Y. 2007)...........................................3

*Will v. Mich. Dep't of State Police*,
491 U.S. 58 (1989)...........................................7

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980)...........................................7

**TABLE OF AUTHORITIES**
**Continued**

**Page**

STATUTES

42 U.S.C. § 1983...............................................................................................................6

OTHER AUTHORITIES

Myriad Genetics, Inc. Form 10-K filed August 26, 2009, *available at*
 http://investor.myriad.com/sec.cfm?DocType=&Year= ........................................13

Christopher M. Holman, *The Impact of Human Gene Patents on Innovation and Access:*
 *A Survey of Human Gene Patent Litigation*, 76:2 UMKC L. REV. 295, 348 (2007).........15, 16

Defendants Myriad Genetics ("Myriad") and the ten individuals alleged to be Directors of the University of Utah Research Foundation (the "Directors") (collectively Myriad and the Directors are referred to as the "Defendants") submit this memorandum of law in opposition to plaintiffs' motion for jurisdictional discovery.

## PRELIMINARY STATEMENT

If this Court has doubts about jurisdiction, plaintiffs seek jurisdictional discovery to present additional facts.  However, plaintiffs' request for discovery is based on legal theories without precedent, and speculation without any basis in fact or even in the allegations of the Complaint.  This Court should not allow the irrelevant discovery that plaintiffs request in their motion.

*First*, plaintiffs claim that they need discovery of the University of Utah's contacts with New York, and the University of Utah Research Foundation's ("UURF's")[1] license agreement and assignment of patent interest with Myriad, to show personal jurisdiction.  However, this discovery is premised on the theory that the contacts of the University of Utah can create jurisdiction over the Directors of the UURF who were actually named in this suit, simply because the Directors were sued in their official capacity.  No court has ever accepted this theory, and several courts – including the Federal Circuit, whose case law is binding here – have applied the "minimum contacts" test to state actors sued in their official capacity.

Furthermore, plaintiffs' suggestion that discovery could show general jurisdiction over the University of Utah is firmly rejected by the case law.  Every court to address the issue has held that an out-of-state university is not subject to general jurisdiction.  And the contacts that

---

[1] The UURF is a not-for-profit corporation that is alleged to be operated, supervised, and/or controlled by the University of Utah.  *See* Compl. ¶ 29.  The UURF is an owner or part-owner of all of the patents at issue in this case.  *See id.*

plaintiffs suggest – which are nowhere alleged in the Complaint – have been repeatedly found not to constitute the continuous and systematic contacts needed for general jurisdiction. Similarly, the discovery plaintiffs seek regarding license agreements – based on speculative assertions not found in the Complaint – would not establish specific jurisdiction, because plaintiffs fail to explain how those agreements relate to the enforcement of the patents in this forum.

*Second*, plaintiffs' requested discovery for subject matter jurisdiction should likewise be rejected. There is no basis for plaintiffs' speculation that Defendants might have engaged in some unknown enforcement of the patents. Even if the purported evidence of other enforcement activity existed, plaintiffs would still fail to meet the requirements of the Federal Circuit's test for standing. Plaintiffs cannot have perceived a threat of an enforcement action against themselves based on Defendants' alleged enforcement activities against others, if plaintiffs did not actually know of those other activities. Thus, the activity would be irrelevant in proving standing.

## ARGUMENT

Plaintiffs fail to satisfy the standard for jurisdictional discovery because none of the evidence they seek would actually provide this Court with jurisdiction. When a plaintiff requests jurisdictional discovery, he must show "why such evidence is relevant" to the jurisdictional issue. *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003). Of course, there is no basis for jurisdictional discovery where "a plaintiff's proposed discovery, if granted, would not uncover facts sufficient to sustain jurisdiction." *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 761 (S.D.N.Y. 2004).

Furthermore, "if the plaintiff has failed to establish a *prima facie* case for personal jurisdiction, jurisdictional discovery is generally not granted." *RSM Production Corp. v.*

*Fridman*, No. 06-CV-11512, 2009 WL 424540, at *11 (S.D.N.Y. Feb. 19, 2009); *see also, e.g.*, *Langenberg v. Sofair*, No. 03-CV-8339 (KMK), 2006 WL 2628348, *6 (S.D.N.Y. Sept. 11, 2006) ("[W]here the plaintiff has failed to make out a prima facie case, courts have displayed an unwillingness to grant additional discovery on jurisdictional issues."); *Stutts v. De Dietrich Group*, 465 F. Supp. 2d 156, 169 (E.D.N.Y. 2006) ("District courts in this circuit routinely reject requests for jurisdictional discovery where a plaintiff's allegations are insufficient to make out a *prima facie* case of jurisdiction.").  Plaintiffs point to a few cases allowing for the possibility of jurisdictional discovery where there is a "sufficient start" toward establishing jurisdiction.  *See* Pls.' Mem. of Law in Support of Mtn. to Conduct Jurisdictional Discovery ("Pl. Discovery Mem.") at 2-3.  However, all but one of these cases predates the Second Circuit's decision in *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181 (2d Cir. 1998), which denied jurisdictional discovery where the plaintiff's allegations were not "sufficient to establish a prima facie case of jurisdiction."  *Id.* at 185.

In any event, even if less than a prima facie showing could suffice in some rare case, conclusory allegations are never enough for discovery.  As *Janzini* explained, if courts accepted "conclusory non-fact-specific jurisdictional allegations . . . , [then t]his would require the federal courts to conduct substantial jurisdictional discovery" over any out-of-state party, "a practice in which they have not hitherto engaged."  *Id.* at 185-86; *see also, e.g.*, *Warner Bros. Entm't Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261, 267 (S.D.N.Y. 2007) (denying jurisdictional discovery where plaintiff's jurisdictional allegations were "generalized" and failed to allege any "specific connection" to the forum).

I.    **PLAINTIFFS ARE NOT ENTITLED TO DISCOVERY ON THE ISSUE OF PERSONAL JURISDICTION**

   A.    **Personal Jurisdiction Must Be Analyzed With Respect To The Directors, And Plaintiffs Request No Discovery As To Them**

Plaintiffs' entire argument for discovery as to personal jurisdiction is based on the faulty premise that the contacts that matter are not those of the Directors against whom this suit was filed.  Plaintiffs do not contest the Directors' declarations attesting to their lack of contacts with New York, nor do they ask for more information about the Directors' activities.  Instead, plaintiffs contend that because the Directors were sued in their official capacity, this Court can exercise jurisdiction over them even if their contacts with this forum do not satisfy the New York and due process requirements.  *See* Memorandum of Law in Opposition to Defendants Myriad and UURF Directors' Motion to Dismiss ("Pl. Opp. Mem.") at 16-18.  However, plaintiffs fail to cite a single case that has ever accepted this theory, and courts have routinely looked at the contacts of defendants sued in their official capacity in evaluating personal jurisdiction.  Accordingly, all of plaintiffs' requests for discovery as to the University of Utah and UURF are simply irrelevant, and should therefore be rejected.

To begin with, plaintiffs' theory is inconsistent with all of the case law applying personal jurisdiction analysis to defendants sued in their official capacity.  For example, as plaintiffs concede, the Fifth Circuit has analyzed the issue and applied the "minimum contacts" test to state officials.  *See Great W. United Corp. v. Kidwell*, 577 F.2d 1256, 1265-68 (5th Cir. 1978), *rev'd on other grounds sub nom. Leroy v. Great W. United Corp.*, 443 U.S. 173 (1979).  More recently, in *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008), the Fifth Circuit again looked at a state official's contacts, holding that "[e]ven if the State of Arizona itself—as a sovereign state, subject to Eleventh Amendment protections—derived a benefit from any 'effects' in Texas generated by the action of the Commissioner, the benefit does not run to those

officials in their individual capacity, stripped of their sovereign immunity cloak." *Id.* at 485. As the court explained, a plaintiff cannot sue an individual in his official capacity to get around sovereign immunity, but then proceed as if he has sued the state for purposes of personal jurisdiction: simply put, a plaintiff "cannot have it both ways under the *Ex Parte Young* doctrine." *Id.*[2] While plaintiffs claim that *Stroman* has other language that supports its position, *see* Pl. Opp. Mem. at 17, that discussion concerned the court's uncertainty about how to interpret the Texas statute. *See* 513 F.3d at 482-83 ("Although the Commissioner is an 'individual,' she is acting in and was sued in her official capacity for enforcing Arizona statutes. . . . Whether the long-arm statute's definition of nonresidents ignores or subsumes the *Ex Parte Young* fiction is uncertain."). This discussion of Texas law does not affect, let alone undermine, the Fifth Circuit's clear holding on the due process requirement for personal jurisdiction being applied to individuals sued in their official capacity.

Likewise, the Federal Circuit held, in a suit against university officials, that personal jurisdiction was lacking because the plaintiff "has made no allegation that the *University Officials* had minimum contacts with the State of Missouri" and "the complaint only alleges that the *University Officials* reside in Arkansas, not Missouri." *Pennington Seed, Inc. v. Produce Exchange No. 299*, 457 F.3d 1334, 1344 (Fed. Cir. 2006) (emphasis added). Plaintiffs attempt to discount this opinion because it "contain[s] no discussion" of the issue, Pl. Opp. Mem. at 18, but *Pennington* plainly shows how the Federal Circuit analyzes personal jurisdiction of a defendant sued in his official capacity. And the Federal Circuit's law on this issue is binding in this case, *see, e.g.*, *Arquest, Inc. v. Kimberly-Clark Worldwide, Inc.*, No. 07 Civ. 11202 (CM), 2008 WL

---

[2] In an analogous context, this Court has also observed that focusing on a particular entity's contacts for personal jurisdiction is improper when that entity is immune from suit. *See Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 150 (S.D.N.Y. 2004) ("There is a serious problem with plaintiffs' attempt to premise personal jurisdiction over the German subsidiaries on Deutsche Bahn's contacts with New York. Deutsche Bahn is immune from suit in the United States.")

2971775, at *4 (S.D.N.Y. July 31, 2008), regardless of whether its analysis is explained to plaintiffs' liking.

Plaintiffs' theory not only conflicts with precedent, but it also has no logical basis. According to plaintiffs, the Supreme Court's decision in *Ex Parte Young*, 209 U.S. 123 (1908), and its progeny require that the Directors be treated as the UURF or the University for purposes of personal jurisdiction. However, *Ex Parte Young* had nothing at all to do with personal jurisdiction. It held only that a state officer can be sued in his official position for injunctive relief, without the protection of sovereign immunity. 209 U.S. at 150. Plaintiffs attempt to convert this sovereign-immunity decision into a new back door for personal jurisdiction, but neither *Ex Parte Young* nor the decisions plaintiffs cite interpreting it have ever suggested that it changes the rules for personal jurisdiction. Indeed, the premise of *Ex Parte Young* – that the officer has no immunity because the state is incapable of authorizing an unlawful action, *id.* at 159 – shows that an *Ex Parte Young* suit is not directed at the state. Thus, the state's conduct is irrelevant for purposes of personal jurisdiction. *See Great W. United Corp.*, 577 F.2d at 1265-66. While plaintiffs suggest that *Great Western*'s interpretation "is at odds with subsequent Supreme Court caselaw, which makes clear that for all but Eleventh Amendment purposes, official capacity suits are to be treated as if they were brought against the state," Pl. Opp. Mem. at 18, the cases plaintiffs cite do not support this statement. In fact, they concerned only the proper interpretation of 42 U.S.C. § 1983, and even in that context the Supreme Court recognized that plaintiffs' principle is incorrect for an *Ex Parte Young* suit: "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are *not treated as actions against*

*the State.*'"  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985)) (emphasis added).[3]

Finally, the consequences of plaintiffs' theory would be staggering, and impossible to square with federalism and the concept of "fair play and substantial justice" that is required for personal jurisdiction.  Under plaintiffs' theory, a state police officer in Utah could be sued in his official capacity in a New York court for allegedly violating a suspect's rights in Utah, even if the police officer had never had any contact with the State of New York.  Such a result is unacceptable because it would force the officer to defend himself in a forum in which he could not "reasonably anticipate being haled into court," as required under due process.  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Moreover, it undermines federalism principles by forcing a Utah official to defend his conduct in a New York court despite the lack of any connection to that court.  *See Grand River Enters. Six Nations, Ltd v. Pryor*, 425 F.3d 158, 167 (2d Cir. 2005) (recognizing that "New York would not ordinarily be the proper forum to challenge another state's legislative and executive actions").  Plaintiffs contend that if personal jurisdiction were required for state officials, *Ex Parte Young* would be severely limited because "it would not permit lawsuits to enjoin unconstitutional actions by states if the person whose rights were violated resided in another state."  Pl. Opp. Mem. at 17 n.6.  However, the lawsuit would still be permitted, simply in the state where the officer is present and/or where the violation occurred.  Indeed, it is absurd to suggest that *Ex Parte Young* would be unfairly limited when it has never before been applied to allow suits without personal jurisdiction.

---

[3] Plaintiffs also contend that "official capacity defendants may assert only those defenses available to the state entity, not personal defenses," Pl. Opp. Mem. at 16, but the cases they cite concern only immunity defenses to liability, and have no bearing on jurisdiction.  *See Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985); *Owen v. City of Independence*, 445 U.S. 622, 637-38 (1980).

Since the Directors' uncontested declarations clearly establish that there is no basis for personal jurisdiction over them, the motion for jurisdictional discovery should be denied. *See, e.g.*, *Ivoclar Vivadent, Inc. v. Ultident, Inc.*, No. 04-CV-0984 (SC), 2005 WL 1421805, at *5 (W.D.N.Y. June 15, 2005) (denying request for jurisdictional discovery where the defendant submitted an affidavit that categorically denied that defendant had transacted business or had any other contacts with New York and answered all questions regarding jurisdiction); *Wafios Mach. Corp. v. Nucoil Indus. Co.*, No. 03 Civ. 9865 (RWS), 2004 WL 1627168, at *5-*6 (S.D.N.Y. July 21, 2004) (denying request for jurisdictional discovery related to a foreign defendant who provided an affidavit categorically denying contacts with New York).

### B. Plaintiffs' Discovery Requests Regarding The University Of Utah Are Incapable Of Establishing General Jurisdiction

Even assuming that the Directors need not have any contacts with this forum, plaintiffs' request for discovery regarding the University of Utah's general contacts with New York, *see* Pl. Discovery Mem. at 7, should be denied because none of those discovery requests could produce evidence sufficient to meet the standard for general jurisdiction.

To begin with, plaintiffs err in focusing on the contacts of the University of Utah rather than those of the UURF. The University of Utah is not a party to this suit. Rather, the Directors of the UURF are parties, and if an injunction were issued in this case, it would be directed at the Directors of the UURF, not the Board of Trustees of the University of Utah. Plaintiffs offer no support for the idea that the University of Utah's contacts should be imputed to the UURF. Their complaint merely makes the allegation that the UURF "is a not-for-profit corporation that is operated, supervised and/or controlled by the University of Utah." Complaint ¶ 29. However, the Second Circuit has explicitly rejected this kind of vague and conclusory allegation of control. *See Janzini*, 148 F.3d at 185 ("The conclusory statements—without any supporting facts—that

Nissan U.S.A. is 'wholly controlled' by Nissan Japan and 'wholly dependent' on Nissan Japan 'for its business plan and financing,' are but a restatement of two of the factors to be considered under the standards . . . . [W]e are not bound to accept as true a legal conclusion couched as a factual allegation." (internal quotation marks omitted)).  Simply put, "[d]iscovery need not be granted to allow [a] plaintiff to engage in an unfounded fishing expedition for jurisdictional facts." *Langenberg*, 2006 WL 2628348, at *6 (quoting *Gear, Inc. v. L.A. Gear Cal., Inc.*, 637 F. Supp. 1323, 1328 (S.D.N.Y. 1986)).[4]

Even if this Court analyzes the contacts of the University of Utah, the discovery requests are irrelevant because they cannot establish general jurisdiction.  Numerous courts have considered whether a university can be subject to general jurisdiction in another state, and every court has held that it cannot.  One district court, surveying the case law from around the country, concluded that "plaintiff has directed the court to no case in which a university from a nonforum state has been held subject to the general jurisdiction of a forum state and, in fact, every case which the court has uncovered holds directly to the contrary."  *Scherer v. Curators of Univ. of Mo. & Law Sch. Admission Council*, 152 F. Supp. 2d 1278, 1282 (D. Kan. 2001) (citing cases); *see also, e.g.*, *Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 543 (3d Cir. 1985) (holding that "St. George's lacked the continuous and substantial business relationship with Pennsylvania to support personal jurisdiction over it with regard to the out of state causes of action").  In recent years, courts have likewise uniformly rejected general jurisdiction for out-of-

---

[4] In their opposition motion, plaintiffs also claim that "UURF and the University should be treated as one and the same, as UURF is simply an instrument of the University operating solely for the University's benefit."  Pl. Opp. Mem. at 19 n.7.  However, this Court should not accept allegations outside the Complaint, *see infra* at p. 10, and even if it were accepted, this allegation is also conclusory.  In any event, the University regulations plaintiffs cite establish that the UURF, not the University of Utah, controls the prosecution of patents, and thus is the relevant party in this case.  *See* University Regulations, Policy 7-002:  Patents and Inventions § IV(A)(i) (Declaration of Daniel B. Ravicher (Docket No. 36) Exh. 3) ("The Research Foundation purchases services of the director of the University Technology Transfer Office to prosecute patents, explore commercialization, and negotiate agreements.").

state universities.  *See, e.g.*, *Ferris v. Rollins College Inc.*, No. 1:08-cv-00039-SPM-AK, 2008 WL 4569872, at *3 (N.D. Fla. Oct. 9, 2008); *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 230 (D.D.C. 2007).

Plaintiffs' allegations and discovery requests fail to distinguish this case from the many others discussed above.  As an initial matter, the Complaint alleges absolutely nothing about the University of Utah's contacts with New York.  And plaintiffs cannot use jurisdictional discovery to support non-existent allegations:  "As a rule, a plaintiff is not entitled to jurisdictional discovery to enable her to bolster an inadequate pleading if the defendant merely challenges the legal sufficiency of the jurisdictional allegations in the complaint, and does not place the factual basis for personal jurisdiction in issue."  *Langenberg*, 2006 WL 2628348, at *6 (quoting *In re Teligent, Inc.*, Nos. 01-12974, 03-3577 (SMB), 2004 WL 724945, at *6 (Bankr. S.D.N.Y. Mar. 30, 2004)).  This principle is simply an application of the usual rule that "the Complaint cannot be amended by the briefs in opposition to a motion to dismiss."  *Islam v. Goord*, No. 05 Civ. 7502 (RJH), 2006 WL 2819651, at *1 n.2 (S.D.N.Y. Sept. 29, 2006) (internal quotation marks omitted).

In any event, the allegations outside the Complaint and the supposed evidence plaintiffs expect to uncover through jurisdictional discovery still fail to establish general jurisdiction.  According to plaintiffs, jurisdictional discovery will show contracts, employee travel, recruitment of students, and alumni activity in New York.  *See* Pl. Discovery Mem. at 7; Pl. Opp. Mem. at 19.  However, each of these facts is routinely rejected as a basis for general jurisdiction.  *See, e.g.*, *Norris v. Okla. City Univ.*, No. C-93-1626-VRW, 1993 WL 313122, at *2 (N.D. Cal. Aug. 3, 1993), *aff'd*, 21 F.3d 1115 (9th Cir. 1994) (fact that university maintained contact with current students and alumni within forum state insufficient to constitute "continuous and

systematic" contacts for purposes of general jurisdiction); *Gallant v. Trustees of Columbia Univ. in City of N.Y.*, 111 F. Supp. 2d 638, 640 (E.D. Pa. 2000) (no general jurisdiction despite recruitment activities, faculty attending conferences, research contracts and agreements, and various other activities in the forum); *Ross v. Creighton Univ.*, 740 F. Supp. 1319, 1323 (N.D. Ill. 1990), *rev'd in part on other grounds*, 957 F.2d 410 (7th Cir. 1992) (no general jurisdiction even assuming college employed full-time recruiter in forum state to encourage residents to attend and supported recruitment effort with direct-mail to prospective students in forum state); *Ferris*, 2008 WL 4569872, at *3 (no general jurisdiction even if "faculty and employees regularly travel to this District to attend conferences" and college engages in alumni activities in the forum).

Plaintiffs' argument, if accepted, would create general jurisdiction for any large university in just about every state. Plaintiffs present no justification for such unlimited jurisdiction. Instead, plaintiffs rely on a few cases outside the university context, which discuss the fact that solicitation is only one factor that does not by itself establish general jurisdiction. *See* Pl. Opp. Mem. at 19.

Finally, plaintiffs posit that "[a]dditional, but not publicly known, contacts between the University and UURF and New York undoubtedly exist." Pl. Discovery Mem. at 7. However, "Plaintiffs' 'expectation' that discovery will uncover additional evidence of [the defendants'] general contacts with New York . . . is, in fact, an unfounded fishing expedition, and does not adequately support its request for jurisdictional discovery." *RSM Prod. Corp.*, 2009 WL 424540, at *11 (internal quotation marks and citation omitted); *see also SODEPAC, S.A. v. Choyang Park*, No. 02 Civ. 3927, 2002 WL 31296341, at *5 (S.D.N.Y. Oct. 10, 2002) ("Plaintiffs assert that 'discovery will likely show that L. Rettenmayer regularly conducts business' in New York,"

but this is "not enough to allow discovery.").  In sum, plaintiffs fail to make a prima facie showing, or even a start toward showing, that the University of Utah's contacts with this forum could suffice for general jurisdiction.

> **C.**    **Plaintiffs' Discovery Requests Regarding The University Of Utah And The UURF Are Incapable Of Establishing Specific Jurisdiction**

Just as for general jurisdiction, even assuming that the Directors need not have any contacts with this forum, plaintiffs' request for discovery regarding the University of Utah and the UURF's contacts with New York, *see* Pl. Discovery Mem. at 5-6, cannot establish specific jurisdiction.  Under the New York long-arm statute, specific jurisdiction requires that the cause of action arise out of the defendants' transactions in the state.  *See* Mem. of Law in Support of Defendants' Motion to Dismiss ("Def. Opening Mem.") at 14.  And as a matter of due process, in the context of a declaratory judgment action against a patentee, the Supreme Court's "purposefully directed" test means that the patentee must have engaged in some kind of activity in the forum for the "*enforcement* or the *defense of the validity* of the relevant patents."  *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1334 (Fed. Cir. 2008); *see also* Def. Opening Mem. at 15.  In response, plaintiffs contend that cease-and-desist letters, along with other activities, can establish specific jurisdiction.  *See* Pl. Opp. Mem. at 21-22.  However, the cease-and-desist letters must actually be sent into the forum, *see, e.g.*, *Breckenridge Pharm., Inc v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006), and here there is no allegation of any such letter sent by the University of Utah or UURF to a potential infringer in New York.[5]

In any event, the "other activities" plaintiffs suggest are irrelevant because the alleged injury does not arise out of these activities.  As the Federal Circuit explained, the "'other

---

[5] Plaintiffs do mention a letter sent to New York, *see* Pl. Opp. Mem. at 23, but that letter was sent by Myriad, not the University of Utah or UURF, and it simply made an offer for a license, not a request to cease and desist activity.  *See* Declaration of Harry Ostrer, M.D. (Docket No. 47) Ex. 2.  Moreover, because the letter was sent in 1998, it is stale and cannot support jurisdiction.

activities' in some identifiable way [must] 'relate to' enforcement of those patents in the forum."

*Avocent*, 552 F.3d at 1334.  Plaintiffs argue for discovery regarding the terms of Myriad's

assignment of interest to UURF, *see* Pl. Discovery Mem. at 6, but plaintiffs' argument for why

the assignment is relevant to jurisdiction makes no sense.  According to plaintiffs, this discovery

would show "why exercising jurisdiction is independently appropriate to prevent Myriad and the

University of Utah from circumventing jurisdiction in courts outside Utah by giving the patents

to UURF." *Id.*  However, plaintiffs do not explain how jurisdiction is circumvented given that

Myriad is not challenging personal jurisdiction as to itself, nor do they explain how

circumvention is part of the analysis for deciding personal jurisdiction.

     Plaintiffs also argue for discovery regarding UURF's exclusive license with Myriad

because the license may create "continuing obligations" on behalf of UURF.  *See* Pl. Discovery

Mem. at 5-6.  However, plaintiffs fail to explain how such obligations would be relevant to the

enforcement of the patents in New York.  Plaintiffs purport to rely on Federal Circuit law for the

proposition that continuing obligations under an exclusive license can create personal

jurisdiction.  *See* Pl. Opp. Mem. at 22 (citing *Breckenridge*, 444 F.3d at 1356).  However, as

mentioned above, *Breckenridge* (and all of the other cases plaintiffs cite on this issue) are

inapposite because in those cases the defendant had sent cease-and-desist letters into the forum

state.

     Even if the license agreements were relevant, discovery would be unnecessary because

the license agreements that exist between Myriad and UURF are publicly available in Myriad's

SEC filings.  *See* Myriad Genetics, Inc. Form 10-K filed August 26, 2009, *available at*

http://investor.myriad.com/sec.cfm?DocType=&Year= (listing as Exhibits 10.13 and 10.14 the

exclusive license agreements with UURF for BRCA1 and BRCA2).  Plaintiffs cannot ask now

for discovery of public filings that they should have discovered for themselves, and (if plaintiffs found them relevant) incorporated into allegations in their Complaint.

In addition, plaintiffs' claim that "it is quite possible that Defendants have conducted additional enforcement activities in New York," Pl. Discovery Mem. at 5, is far too vague and conclusory to support discovery, particularly since it has no basis in the allegations of the Complaint. *See supra* at pp. 3, 10. Even assuming this Court could treat the assertions in the memorandum of law as proper allegations, the declarations submitted by the Directors clearly refute any "possibility" of other activity in New York for enforcement of the BRCA1 and BRCA2 patents. All of the Directors attested that they "have engaged in no activity in the State of New York with respect to the patents at issue in this lawsuit." *See* Declaration of Barry R. Satine in Support of Motion to Dismiss (Docket No. 29), Exs. C-L. Plaintiffs identify no basis for challenging these declarations.

## II. PLAINTIFFS ARE NOT ENTITLED TO DISCOVERY ON THE ISSUE OF SUBJECT MATTER JURISDICTION

Plaintiffs also request discovery of Defendants' "actual and threatened enforcement of the patents" to show subject matter jurisdiction, *see* Pl. Discovery Mem. at 4-5, but such supposed enforcement could not suffice for standing.[6] Accordingly, the request for this discovery should also be denied.

As an initial matter, enforcement of the patents is irrelevant unless the plaintiffs have a concrete plan for potentially infringing action. *See* Def. Opening Mem. at 4, 11; *see also Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 880 (Fed. Cir. 2008) ("If a declaratory judgment plaintiff has not taken significant, concrete steps to conduct infringing activity, the dispute is

---

[6] Plaintiffs make various arguments on the standing issue in their opposition to the motion to dismiss. Defendants will address these standing arguments in their reply memorandum in support of the motion to dismiss, due on September 23, 2009. For purposes of this discovery motion, Defendants focus on how the requirements for standing, as explained in Defendants' opening memorandum, demonstrate that discovery is unwarranted here.

neither 'immediate' nor 'real' and the requirements for justiciability have not been met."). Here, there have been no "significant, concrete steps," *see* Def. Opening Mem. at 11-13, and thus – regardless of any enforcement activity – plaintiffs cannot show standing to bring this suit.

Furthermore, the threatened enforcement alleged here does not meet the other requirement for standing: a relevant, affirmative action by Defendants. *See* Def. Opening Mem. at 6-7. The sending of cease-and-desist letters to individuals other than plaintiffs does not suffice as an affirmative action. *See id.* at 9. That is particularly true in this case because there is no allegation – in the Complaint or plaintiffs' memoranda – that the unknown threatened enforcement, for which plaintiffs seek discovery, concerned the same potentially infringing activity that plaintiffs want to pursue. *See id.* at 8-9. Indeed, when they brought this litigation, plaintiffs could not have felt any "threat of future injury," *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008), based on enforcement that they have yet to discover. Simply put, if plaintiffs did not actually know about such prior enforcement, then they could not have been threatened by it.

Finally, it is difficult to imagine, with the particular plaintiffs in this case – the Association for Molecular Pathology, the American College of Medical Genetics, the American Society for Clinical Pathology, and the College of American Pathologists – and amici such as the American Medical Association filing on behalf of plaintiffs, that none of their members would be aware of some significant enforcement action taken by Defendants. Indeed, the law review article plaintiffs cite in discussing Defendants' enforcement activity, *see* Pl. Opp. Mem. at 11, makes clear that "Myriad has apparently only sought to enforce its BCRA patents in court on two occasions [in 1997 and 1998] and . . . both cases were dismissed relatively early on." Christopher M. Holman, *The Impact of Human Gene Patents on Innovation and Access: A*

*Survey of Human Gene Patent Litigation*, 76:2 UMKC L. REV. 295, 348 (2007). Plaintiffs offer

no basis to engage in a fishing expedition to explore other possible activity of Defendants.

## CONCLUSION

For the reasons set forth above, Defendants Myriad and the Directors of the UURF

respectfully request that plaintiffs' motion for jurisdictional discovery be denied.

Dated:    New York, New York              JONES DAY
          September 16, 2009

                                          By: /s/ Barry R. Satine
                                              Brian M. Poissant (BP2350)
                                              Barry R. Satine (BS8785)
                                              Laura A. Coruzzi (LC0931)
                                              222 East 41st Street
                                              New York, NY  10017
                                              (212) 326-3939

                                          *Attorneys for Defendants Myriad Genetics,*
                                          *Lorris Betz, Roger Boyer, Jack Brittain, Arnold*
                                          *B. Combe, Raymond Gesteland, James U.*
                                          *Jensen, John Kendall Morris, Thomas Parks,*
                                          *David W. Pershing, and Michael K. Young*

## <u>CERTIFICATE OF SERVICE</u>

 The undersigned hereby certifies that the foregoing was served electronically by the Court's ECF system and by first class mail on those parties not registered for ECF pursuant to the rules of this court.


Dated:  September 16, 2009      <u>s/ Barry R. Satine</u>
               Barry R. Satine