UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------x
ASSOCIATION FOR MOLECULAR PATHOLOGY;
AMERICAN COLLEGE OF MEDICAL GENETICS;
AMERICAN SOCIETY FOR CLINICAL PATHOLOGY;
COLLEGE OF AMERICAN PATHOLOGISTS;
HAIG KAZAZIAN, MD; ARUPA GANGULY, PhD;
WENDY CHUNG, MD, PhD; HARRY OSTRER, MD;
DAVID LEDBETTER, PhD; STEPHEN WARREN, PhD;
ELLEN MATLOFF, M.S.; ELSA REICH, M.S.;
BREAST CANCER ACTION; BOSTON WOMEN'S
HEALTH BOOK COLLECTIVE; LISBETH CERIANI;
RUNI LIMARY; GENAE GIRARD; PATRICE FORTUNE;           09 Civ. 4515 (RWS)
VICKY THOMASON; KATHLEEN RAKER,

                                          Plaintiffs,
                       v.                                                     ECF Case

UNITED STATES PATENT AND TRADEMARK
OFFICE; MYRIAD GENETICS; LORRIS BETZ,
ROGER BOYER, JACK BRITTAIN, ARNOLD B.
COMBE, RAYMOND GESTELAND, JAMES U.
JENSEN, JOHN KENDALL MORRIS, THOMAS PARKS,
DAVID W. PERSHING, and MICHAEL K. YOUNG,
in their official capacity as Directors of the University
of Utah Research Foundation,

                                          Defendants.
-----------------------------------------------------------------------------x

## PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CONDUCT JURISDICTIONAL DISCOVERY

Daniel B. Ravicher (DR1498)                Christopher A. Hansen (CH6776)
Public Patent Foundation (PUBPAT)          Aden Fine (AF5241)
Benjamin N. Cardozo School of Law          Lenora M. Lapidus (LL6592)
55 Fifth Ave., Suite 928                   Sandra S. Park (SP6817)
New York, NY 10003                         American Civil Liberties Union Foundation
(212) 790-0442                             125 Broad Street – 18th floor
                                           New York, NY 10004
                                           212-549-2606

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ...................................................................................................1

I. A PRIMA FACIE SHOWING IS NOT NECESSARY TO OBTAIN JURISDICTIONAL DISCOVERY ................................................................1

II. LIMITED DISCOVERY WOULD SUPPLEMENT THE BASIS FOR PERSONAL JURISDICTION OVER THE DIRECTORS ...............................2

    A. Because They Were Sued In Their Official Capacity, The Directors Are Viewed As The State Actors They Direct For Personal Jurisdiction Purposes ...........................................................................................3

    B. Discovery Would Support Personal Jurisdiction Over The Directors ........5

        1. Discovery Would Support Specific Jurisdiction Over The Directors ...................................................................................6

        2. Discovery Would Support General Jurisdiction Over The Directors ...................................................................................7

III. DISCOVERY ON SUBJECT MATTER JURISDICTION IS APPROPRIATE BECAUSE "ALL THE CIRCUMSTANCES" ARE RELEVANT .......................................................................................9

CONCLUSION......................................................................................................10

# TABLE OF AUTHORITIES

Page

**CASES**

*Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189 (S.D.N.Y. 2000)................................2, 9

*Akro Corp. v. Luker*, 45 F.3d 1541 (Fed. Cir. 1995) ......................................................6, 7

*Allojet PLC v. Vantage Assocs.*,
  No. 04-CV-5223, 2005 WL 612848 (S.D.N.Y. Mar. 15, 2005) ..........................2, 8

*Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324 (Fed. Cir. 2008) .............1, 6, 7

*Ayyash v. Bank Al-Madina*,
  No. 04 Civ. 9201, 2006 WL 587342 (S.D.N.Y. Mar. 9, 2006) ...............................2

*BHP Trading (UK) Ltd. v. Deep Sea Int'l Shipping Co.*,
  No. 90 Civ. 2231, 1991 WL 198747 (S.D.N.Y. Sept. 23, 1991) ............................2

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*,
  444 F.3d 1356 (Fed. Cir. 2006) ........................................................................6, 7

*Burchette v. Abercrombie & Fitch Stores, Inc.*,
  No. 08 Civ. 8786, 2009 WL 856682 (S.D.N.Y. Mar. 30, 2009) .....................1, 2, 9

*Cicalo v. Harrah's Operating Company, Inc.*,
  2008 WL 1847665 (S.D.N.Y. Apr. 24, 2008).....................................................1, 2

*Ex parte Young*, 209 U.S. 123 (1908) ................................................................. *passim*

*Filus v. Lot Polish Airlines*, 907 F.2d 1328 (2d Cir. 1990) .................................................2

*Genetic Implant Systems v. Core-Vent Corp.*, 123 F.3d 1455 (Fed. Cir. 1997) .................6

*Great Western United Corp. v. Kidwell*, 577 F.2d 1256 (5th Cir. 1978) .......................4, 5

*Hafer v. Melo*, 502 U.S. 21 (1991) .................................................................................3, 4

*Hollins v. U.S. Tennis Ass'n,* 469 F. Supp. 2d 67 (E.D.N.Y. 2006) ....................................2

*Home Tel. and Tel. v. Los Angeles*, 227 U.S. 278 (1913) ...................................................3

*In re Magnetic Audiotape Antitrust Litig.,* 334 F.3d 204 (2d Cir. 2003)..............................2

*Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181 (2d Cir. 1998) ............................................2

*Kentucky v. Graham,* 473 U.S. 159 (1985) ....................................................................3, 4

*Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270 (1941) ..........................................9, 10

*MedImmune v. Genentech*, 549 U.S. 118 (2007) .................................................................9

*Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897 (Fed. Cir. 2008) ........................10

*Pennington Seed, Inc. v. Produce Exchange No. 299*, 457 F.3d 1334 (Fed. Cir. 2006) .....5

*Stratagem Dev. Corp. v. Heron Int'l N.V.,*
    153 F.R.D. 535 (S.D.N.Y. 1994) ..................................................................................2

*Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008) ........................................5

*Texas Int'l Magnetics, Inc. v. BASF Aktiengesellschaft,*
    31 Fed.Appx. 738 (2d Cir. 2002)..................................................................................2

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*,
    751 F.2d 117 (2d Cir. 1984).........................................................................................9

*Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196 (2d Cir. 2001) .........................................2

*Winston & Strawn v. Dong Won Secs. Co. Ltd.,*
    No. 02 Civ. 0183, 2002 WL 31444625 (S.D.N.Y. Nov.1, 2002) .................................2

*Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000) ................................8, 9

**STATUTES AND RULES**

Fed. R. Civ. P. 17(d) ............................................................................................................3

Fed. R. Civ. P. 25(d) ............................................................................................................3

**INTRODUCTION**

Defendants' opposition to Plaintiffs' motion for jurisdictional discovery belies a fundamental misunderstanding of the legal standard for jurisdictional discovery, the nature and purpose of official capacity lawsuits, and the law of personal jurisdiction in patent cases involving exclusive license agreements. First, Plaintiffs do not need to make a *prima facie* showing of jurisdiction to obtain jurisdictional discovery, because such a showing is sufficient to defeat the motion to dismiss itself. Second, the Court should focus on the forum contacts of the state entities, not the personal contacts of the official capacity defendants, because official capacity lawsuits are, in all but name, suits against the state entity, not the individual named defendants. Finally, the Federal Circuit has repeatedly held that there is personal jurisdiction over a defendant who has granted an exclusive license to an entity that operates in the forum state. Thus, should the Court doubt whether there is standing or personal jurisdiction over the Directors, Plaintiffs should be permitted to conduct discovery on those issues.

**I.  A PRIMA FACIE SHOWING IS NOT NECESSARY TO OBTAIN JURISDICTIONAL DISCOVERY**

Defendants claim that jurisdictional discovery can only be granted if a plaintiff makes a *prima facie* showing that jurisdiction is present. Defs. Opp., 2-3. That is not correct. If it were, there would never be a need for discovery, because once a *prima facie* showing of jurisdiction is made, the motion to dismiss should be denied. *See, e.g.*, *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008). The correct standard is that jurisdictional discovery is appropriate so long as a "sufficient start" or a "threshold showing" has been demonstrated. *See, e.g., Burchette v. Abercrombie & Fitch Stores, Inc.*, No. 08 Civ. 8786, 2009 WL 856682, at *5 (S.D.N.Y. Mar. 30, 2009); *Cicalo v. Harrah's Operating Company, Inc.,* 2008 WL 1847665,

at * 5 (S.D.N.Y. April 24, 2008); *Allojet PLC v. Vantage Assocs.*, No. 04-CV-5223, 2005 WL 612848, at *7 (S.D.N.Y. Mar. 15, 2005); *Winston & Strawn v. Dong Won Secs. Co. Ltd.,* No. 02 Civ. 0183, 2002 WL 31444625, at *5 (S.D.N.Y. Nov.1, 2002) (Sweet, J.) (permitting discovery to enable plaintiff to obtain facts not yet known or alleged that could establish jurisdiction); *Aerotel, Ltd. v. Sprint Corp.,* 100 F. Supp. 2d 189, 194 (S.D.N.Y. 2000); *Stratagem Dev. Corp. v. Heron Int'l N.V.,* 153 F.R.D. 535, 547-48 (S.D.N.Y. 1994); *BHP Trading (UK) Ltd. v. Deep Sea Int'l Shipping Co.,* No. 90 Civ. 2231, 1991 WL 198747, at *5 (S.D.N.Y. Sept. 23, 1991); *see also Filus v. Lot Polish Airlines*, 907 F.2d 1328, 1332 (2d Cir. 1990). The Second Circuit's decision in *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181 (2d Cir. 1998), did not change this. *See Texas Int'l Magnetics, Inc. v. BASF Aktiengesellschaft,* 31 Fed.Appx. 738, 739 (2d Cir. 2002) (distinguishing *Jazini* and granting discovery even though *prima facie* showing not made); *In re Magnetic Audiotape Antitrust Litig.,* 334 F.3d 204, 208 (2d Cir. 2003); *Hollins v. U.S. Tennis Ass'n,* 469 F. Supp. 2d 67, 71 (E.D.N.Y. 2006) ("*Jazini* did not categorically deny jurisdictional discovery in the absence of a prima facie showing"); *Ayyash v. Bank Al-Madina,* No. 04 Civ. 9201, 2006 WL 587342, at *5 n.7 (S.D.N.Y. Mar. 9, 2006). Thus, because Plaintiffs have made a "sufficient start" toward establishing jurisdiction, Plaintiffs should at least be given an opportunity to conduct jurisdictional discovery.[1]

## II. LIMITED DISCOVERY WOULD SUPPLEMENT THE BASIS FOR PERSONAL JURISDICTION OVER THE DIRECTORS

---

[1] Defendants also claim that Plaintiffs have failed to make the requisite showing because there are not sufficient jurisdictional allegations in the Complaint itself. Defs. Opp., 2, 10. That argument is frivolous. *See, e.g., Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 208 (2d Cir. 2001) (courts can rely on allegations in complaint and on affidavits submitted in opposition to motions to dismiss to determine if jurisdiction has been established).

### A. Because They Were Sued In Their Official Capacity, The Directors Are Viewed As The State Actors They Direct For Personal Jurisdiction Purposes

Under *Ex parte Young*, 209 U.S. 123 (1908), state officials are treated as state actors for all but Eleventh Amendment issues. *See Home Tel. and Tel. v. Los Angeles*, 227 U.S. 278, 283-84 (1913). Thus, for personal jurisdiction purposes, courts should treat *Ex parte Young* defendants not as individuals, but as the state entity. *See Hafer v. Melo*, 502 U.S. 21, 26 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State."). Defendants' argument that there is no support for this principle ignores the Federal Rules of Civil Procedure and clear Supreme Court caselaw regarding official capacity lawsuits.

The Federal Rules illustrate that in official capacity lawsuits, the identity of the named defendant is irrelevant. Indeed, under Fed. R. Civ. P. 17(d) and 25(d), a plaintiff need not even provide the name of the official capacity defendant, and an official capacity defendant is automatically dropped and replaced by his or her successor when leaving office. Likewise, the summons and complaint need not be served on the successor, because since the suit is against the office, not the individual, service on the original defendant is sufficient. Given these principles, it makes no sense to look at the personal forum contacts of a named defendant such as defendant Gestelend, who is apparently no longer a UURF Director. *See Hafer*, 502 U.S. at 25 (citing these Rules as support for why official capacity suits are against the state, not the named official).

The Supreme Court has similarly made clear that the difference between an official capacity lawsuit and a personal capacity action is not merely a difference in pleading. *Kentucky v. Graham*, 473 U.S. 159 (1985). A personal capacity lawsuit is an action in which the defendant is personally liable and may assert certain personal defenses, such as qualified immunity. *Id.* at 165-67. An official capacity action is, in all but name, a suit against the

governmental entity, and the defendant may assert only those defenses available to the governmental entity. *Id.* at 165-66. As a result, because the Directors have been sued solely in their official capacities, they can only raise defenses available to the state entities, not defenses available to them had they been sued personally. *Hafer*, 502 U.S. at 25.[2]

Defendants claim that such a result would mean that "a state police officer in Utah could be sued in his official capacity in a New York court for allegedly violating a suspect's rights in Utah, even if the police officer had never had any contact with the State of New York." Defs. Opp., 7. That statement belies a total misunderstanding of the difference between individual and official capacity lawsuits. If an officer directly violates a person's rights by, for example, using excessive force, that officer would be sued in his individual capacity, not in his official capacity, regardless of the "capacity" in which he committed the act. *Graham*, 473 U.S. at 165-67.

That this issue has not been resolved by the courts does not mean that the official capacity principles of the Federal Rules and Supreme Court caselaw do not compel this result. *Great Western United Corp. v. Kidwell*, 577 F.2d 1256 (5th Cir. 1978) (Wisdom, J.), *rev'd* on other grounds, *Leroy v. Great Western United Corp.*, 443 U.S. 173 (1979) is the only case that has directly addressed the impact of *Ex parte Young* on personal jurisdiction. Although that case contains some language that, consistent with *Ex parte Young,* rejects the defendant's attempt to invoke the State's immunity from suit, the personal jurisdiction analysis conducted establishes that the relevant forum contacts are those of the Idaho department (run by the named defendant), not the personal contacts of the official himself, such as where he has bank accounts, owns property, etc. *See, e.g., Id.* at 1268 (finding jurisdiction in Texas over the Idaho official because

---

[2] Although Defendants contend that this rule would be tantamount to letting Plaintiffs have it both ways, that is exactly what *Ex parte Young* intended to do in order to permit lawsuits to be brought to remedy constitutional wrongs which could otherwise not be brought. Defendants may not like this principle, but it is well-established law.

"Idaho's 'business' is to regulate. It was conducting that business in Texas."). The Fifth Circuit's decision in *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008) (E. Jones, J.), also does not support Defendants' position. The personal jurisdiction analysis in that case also does not focus – as Defendants here would like – on the personal contacts of the defendant. Instead, the focus is on the actions of the department run by the defendant in enforcing the State's laws. *Id.* at 484-86. Although there is some inconsistent language regarding the meaning of *Ex parte Young*, that language simply states that the entire State's contacts cannot be imputed to an *Ex parte Young* defendant; it does not say that the contacts of her Department are not imputed to the official capacity defendant. *Id.* at 485. In any event, this language is pure dicta. *Id.* at 489-90 (concurrence).

*Pennington Seed, Inc. v. Produce Exchange No. 299*, 457 F.3d 1334 (Fed. Cir. 2006), is not to the contrary, as it does not even address this issue. Although the Federal Circuit found no personal jurisdiction over the defendants in that case because the plaintiff "made no allegations that the University Officials had minimum contacts with the State," *Id.* at 1344, in this case, Plaintiffs have made sufficient allegations and presented sufficient evidence to demonstrate that Defendants have the requisite minimum contacts with New York. *Pennington* is also of limited utility because the defendants there were sued in their individual and official capacities. The absence of any discussion in *Pennington* concerning the impact of *Ex parte Young* on personal jurisdiction cannot be read to suggest that the Federal Circuit has rejected Plaintiffs' argument. At most, it means the Federal Circuit has not yet addressed the issue.

### B. Discovery Would Support Personal Jurisdiction Over The Directors

Defendants have still not made any argument or submitted any affidavits suggesting that

the Court does not have jurisdiction over UURF, the entity for whom the Directors are proxies. UURF is amenable to service of process under New York's long-arm statute and exercising jurisdiction over it would be consistent with principles of due process. To the extent the Court is unsure, Plaintiffs' request for discovery should be granted.

### 1. Discovery Would Support Specific Jurisdiction Over The Directors

A long line of Federal Circuit cases establishes that by entering into exclusive license agreements with Myriad which create continuing obligations for UURF, the Directors have purposefully availed themselves of the privilege of conducting business in New York. *See, e.g., Avocent*, 552 F.3d at 1333-35; *Breckenridge Pharm. Inc., v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363-66 (Fed. Cir. 2006); *Akro Corp. v. Luker*, 45 F.3d,1541, 1546 (Fed. Cir. 1995); *Genetic Implant Systems v. Core-Vent Corp.*, 123 F.3d 1455, 1458-59 (Fed. Cir. 1997). The critical factor is whether the license agreement imposes "continuing obligations" on the patentee so that there is an ongoing relationship with the licensee beyond the mere receipt of royalty income. *See, e.g., Breckenridge*, 444 F.3d at 1366.

As in *Breckenridge*, the facts here suggest that the license agreements between Myriad and UURF "not only contemplated an ongoing relationship" between them, but have "actually resulted in such a relationship." *Id.* at 1367. For example, UURF's standard policy is to retain the right to enforce licensed patents and to initiate proceedings regarding them. D. Ravicher, Exh. 7. That creates the requisite continuing obligations. *Id.* at 1366. If, as Plaintiffs allege and support with declarations here, the license agreements between Myriad and UURF create such continuing obligations, specific jurisdiction over UURF is created by "the license agreement itself." *Id.* at 1365. To the extent the Court believes further information is necessary to

demonstrate the requisite "continuing obligations," discovery on that issue should be permitted.

Defendants' claim that discovery is not necessary because the license agreements are publicly available is disingenuous. Defs. Opp., 13. Although they are listed in Myriad's public SEC filings, the license agreements are not available in the SEC's EDGAR database or on Myriad's website. All that is publicly available is an index listing them as exhibits to another filed document, which is not available. In addition, that index states that the filed versions of the license agreements were redacted. Therefore, if the Court finds Plaintiffs' allegations regarding the license agreements insufficient to exert specific jurisdiction over the Directors, the Court should allow Plaintiffs to perform limited discovery on the issue.

Specific jurisdiction over the Directors is also appropriate because they have caused or participated in sending threatening letters (thinly disguised as "offers to license") to Plaintiffs, including the New York Plaintiffs. *See* D. Ostrer ¶ 7. They have also caused or participated in direct in-person cease-and-desist efforts that occurred in New York. D. Kazazian ¶ 6. Although New York-based cease-and-desist efforts may not be sufficient on their own to create jurisdiction, they are highly relevant to the inquiry. *See, e.g., Avocent,* 552 F.3d at 1334-35; *Breckenridge,* 444 F.3d at 1366; *Akro*, 45 F.3d at 1546. As a result, should the Court have questions about whether this factor provides additional support to exert specific jurisdiction over the Directors, Plaintiffs seek leave to perform limited discovery on the issue.[3]

### 2. Discovery Would Support General Jurisdiction Over The Directors

---

[3] Contrary to Defendants' assertion, the license agreements undoubtedly relate to the claims at issue in this case, which challenge the validity of the very patents covered by the agreements. *Akro*, 45 F.3d at 1548-49 ("[The patentee's] exclusive license agreement with [the plaintiff's] local competitor Pretty Products undoubtedly relates to [the plaintiff's] challenge to the validity and enforceability of the '602 patent.").

7

As explained above, under *Ex parte Young*, the relevant question is whether there is personal jurisdiction over UURF, not the Directors as individuals. Because UURF is itself an extension of the University of Utah, personal jurisdiction over the Directors can also be based on jurisdiction over the University. Although Defendants claim that universities are not usually subject to general jurisdiction outside their home state, that does not mean there is not general jurisdiction here. Personal jurisdiction is, by its nature, determined on a case-by-case basis. Here, Plaintiffs have made a sufficient showing to warrant obtaining discovery on the issue of general jurisdiction, including submitting evidence demonstrating that the University of Utah and UURF have entered into contracts to be performed in New York and engaged in solicitation of New York residents, in addition to numerous other acts of conducting business in New York. Pls. Mem., 19-20. Defendants do not deny these facts. The cases cited by Defendants do not, by contrast, focus on these claims that the university entered into contracts to be performed in the forum state and solicited funds from forum residents. Unlike the forum contacts deemed by those courts to be insufficient to constitute purposeful availment, entering into contracts to be performed in New York and soliciting New York residents involves the affirmative act of Defendants reaching into the forum and purposefully availing themselves, at least under New York law. *See, e.g., Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 98 (2d Cir. 2000) (discussing "solicitation plus" rule for jurisdiction). Discovery on these issues, including the scope of Defendants' contractual undertakings and other business dealings within New York, would bolster Plaintiffs' showing of general jurisdiction and thus should be allowed. *See, e.g., Allojet*, 2005 WL 612848, at *7 (permitting discovery on general jurisdiction issue).

Defendants contend that the University of Utah's contacts should not be imputed to

UURF, on the ground that Plaintiffs' allegations regarding the relationship between the University and UURF are allegedly too "conclusory." Defs. Opp., 8-9. That claim is without merit. Plaintiffs have provided specific evidence – not conclusory allegations – demonstrating that the University itself treats UURF and the University as the same entity. *See* D. Ravicher Exh. 3 (University Policy 7-002: Patents and Inventions, III(E)); Exh. 7 (Model License Terms).

Given this evidence, there is no question that UURF is a "mere department" and/or "agent" of the University and that the two entities should be treated as the same for jurisdictional purposes. *See, e.g., Wiwa,* 226 F.3d at 95-98; *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120-22 (2d Cir. 1984). At a minimum, Plaintiffs have presented sufficient evidence to demonstrate that they should be given an opportunity to conduct discovery to obtain further confirmation that the two entities are one and the same. *See, e.g., Burchette*, 2009 WL 856682, at *5; *Aerotel,* 100 F. Supp. 2d at 194.

### III. DISCOVERY ON SUBJECT MATTER JURISDICTION IS APPROPRIATE BECAUSE "ALL THE CIRCUMSTANCES" ARE RELEVANT

Defendants' assertions that "*enforcement of the patents is irrelevant* unless the plaintiffs have a concrete plan for potentially infringing action," "the threatened enforcement alleged here does not meet *the other requirement* for standing: a relevant, affirmative action by Defendants," "[t]he sending of cease-and-desist letters to individuals other than plaintiffs *does not suffice* as an affirmative act," and "plaintiffs could not have *felt any 'threat* of future injury'," are incorrect. Defs. Opp.*,* 14-15 (emphases added). Under *MedImmune*, "'the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy ... of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *MedImmune Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. Pac.*

9

*Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Under this "all the circumstances" test, Defendants' enforcement of the patents is highly relevant to standing. For example, Defendants' enforcement of the patents against others is directly relevant to the analysis. *Micron Tech. Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 899-901 (Fed. Cir. 2008). Likewise relevant is if Defendants ever considered enforcing the patents against Plaintiffs, or considered Plaintiffs to be potential competitors. While Plaintiffs have some information about Defendants' enforcement activities (submitted in Plaintiffs' Opposition to Defendants' Motion to Dismiss), they likely do not have all relevant information. Indeed, some of these facts, such as contemplated enforcement acts, are exclusively within Defendants' control. Allowing Plaintiffs to perform limited discovery on these issues is, thus, appropriate if the Court is unsure whether the circumstances here are sufficient to justify standing.

Plaintiffs have already alleged – and supported with uncontroverted declarations – sufficient facts to justify standing. There are undoubtedly additional facts that would support standing, which could be uncovered through discovery. Therefore, if the Court doubts whether Plaintiffs have standing, Plaintiffs should be permitted to perform a limited amount of discovery to uncover those additional facts.

## **CONCLUSION**

For all these reasons, Plaintiffs' motion for leave to conduct jurisdictional discovery should be granted.

Respectfully submitted,

By: /s/ Christopher A. Hansen

Daniel B. Ravicher (DR1498)  
Public Patent Foundation (PUBPAT)  
Benjamin N. Cardozo School of Law  
55 Fifth Ave., Suite 928  
New York, NY 10003  
(212) 790-0442  
ravicher@pubpat.org  

Christopher A. Hansen (CH 6776)  
Aden Fine (AF 5241)  
American Civil Liberties Union Foundation  
125 Broad Street – 18th floor  
New York, NY 10004  
212-549-2606  
chansen@aclu.org  
afine@aclu.org  

Lenora M. Lapidus (LL6592)  
Sandra S. Park (SP6817)  
Women's Rights Project  
American Civil Liberties Union Foundation  
125 Broad Street – 18th floor  
New York, NY 10004  
212-549-2668  
llapidus@aclu.org  
spark@aclu.org  

September 23, 2009